**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**DWIGHT DEVANE BYRD,**   )
     **Plaintiff,**   )
        )
**v.**   )   **CIVIL ACTION NO. 5:06-0302**
        )
        )
**PERRY SKAGGS,**   )
     **Defendant.**   )

## PROPOSED FINDINGS AND RECOMMENDATION

On April 26, 2006, Plaintiff, an inmate incarcerated at Federal Correction Institution, Beckley [hereinafter FCI Beckley], West Virginia, and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to the Federal Tort Claims Act, 28 §§ 1346(b) and 2671, et seq., and for alleged violations of Plaintiff's constitutional rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971).[1] (Document No.1). By Standing Order entered on July 21, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.)

## FACTS AND PROCEDURE

Plaintiff alleges that on August 24, 2005, Defendant Skaggs, a housing unit officer, improperly confiscated Plaintiff's personal property during a routine search of his locker and cell. Plaintiff's Complaint states the following:

> Perry Skaggs went to my cell to shake-down. He found a homemade engraver. He notified his superiors, who then confirmed that the item was indeed an engraver, not

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

a weapon. Skaggs was called while I was in front of the Lt. and told of their finding. In front of several inmates, P. Skaggs did willfully remove my personal property from my cell without my permission. To the tune of $688.25. I asked Skaggs to come into my cell and tell me where my property was, he came in and looked in my locker that I now had wide open, and smiled at me and stated 'You know we don't take stuff like that.' I asked him if anyone else had been in my locker and he replied 'No.' I again asked him where my property was and he said that the things that he did take were in the back and that he would go see about it. He then locked my cell and went home. I had the next officer to call Lt. Hickey as soon as he opened the cells. I also asked him to check the back for a visual on my property in which he did not see.

(Document No. 1, p. 4.) Plaintiff contends that four inmates saw Defendant Skaggs take "2 large bags of property from his cell." Plaintiff alleges that the following property was missing after the routine search: two packs of AAA batteries, one pack of AA batteries, Sony radio, Koss headphones, eight books of stamps, clippers, 20 envelopes, two photo albums, one typewriter ribbon, one box correction tape, 64 bottles of paint, magnifying glass, soap dish, two composition books, one box push pins, four bottles glitter, can opener, several commissary items, and five magazines. Plaintiff further states that inmates found bottles of paint in a trash bin a few days after the search. Plaintiff believes the paint found in the trash bin belonged to him. (Document No. 1, p. 16.) Plaintiff seeks $688.25 in compensatory damages and punitive damages.

On September 19, 2005, Plaintiff filed his initial administrative remedy at the Regional Office level (Remedy ID 389278-R1)[2] alleging that his property was stolen. (Document No. 20-2, pp. 2 and 28.) The remedy was rejected by the Regional Office on September 20, 2005, because

_____

[2]   Administrative Remedy Numbers identify at what level the remedy was filed and the number of times the remedy was filed at that level. A remedy filed at the institutional level is identified by an F, at the Regional Office level an R, and at the Office of General Counsel level an A. An initial remedy filed at the institutional level is assigned an F1. If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as F2. The same system is used for all three levels. (Document No. 20-2, p. 3.)

Plaintiff failed to first file a remedy at the institutional level.[3] (Id.)

Plaintiff filed an administrative remedy request at the institutional level (Remedy ID 391471-F1) on October 12, 2005, seeking an investigation into the alleged theft. (Id.) The remedy was rejected the same day because more specific information was needed, only one letter-size continuation page is permitted per remedy, and Plaintiff failed to first attempt informal resolution. (Id.) On November 3, 2005, Plaintiff again filed an administrative remedy request at the institutional level (Remedy ID 393861-F1) contending that Defendant stole his personal property. (Id., pp. 2 and 29.) After an investigation, the request was denied on December 13, 2005. (Id. pp. 3 and 29.)

On January 13, 2006, Plaintiff appealed his denial at the institutional level to the Regional Office. (Id.) The request was rejected on January 17, 2006 for being untimely. (Id.) Plaintiff resubmitted his request to the Regional Office (Remedy ID 393861-R2) on February 6, 2006, where it was rejected for being submitted at the wrong level. (Id., pp. 3 and 30.)

On March 30, 2006, Plaintiff appealed the rejection to the Office of General Counsel (Remedy ID 393861-A1). (Id.) The appeal was rejected on April 5, 2006 for being untimely. (Id.)

---

[3] When appeals are rejected at Regional or Office of General Counsel level, no copies are kept of the remedy or the rejection notice. Rather, SENTRY (the Bureau's electronic record system) records show that the appeal was filed and rejected. SENTRY records indicate codes which explain the reason(s) for the rejection, as well as the dates of filing. The following are status codes and their meanings:

REJ = Rejected;

INS = Inmate must first file a BP-9 request through the institution for the Warden's review and response;

MSI = Inmate must provide more specific information about the request/appeal;

INF = Inmate did not attempt informal resolution or did not provide evidence of the attempt at informal resolution;

ONE = Inmate may only submit up to one letter-size continuation page;

UTR = Appeal is untimely; regional appeals must be received within 20 days of the Warden's response, including mailing time;

WRL = Inmate submitted request or appeal to the wrong level or wrong office.

(Document No. 20-2, p. 3.)

The Office of General Counsel noted that it concurred with the Regional Office's rationale for rejecting the appeal for being untimely. (Id.)

Plaintiff filed an administrative tort claim (TRT-MXR-2005-00960) with the Department of Justice on December 6, 2005. (Id., p. 1.) The administrative tort claim was denied on February 3, 2006, following an investigation by the Bureau of Prisons. (Id., p. 2.) The investigation revealed that Defendant Skaggs conducted a routine search of Plaintiff's cell on August 24, 2005. (Id., pp. 2, 19 and 20.) Defendant Skaggs documented the search in the unit shakedown log book. According to the log book, the only items confiscated from Plaintiff's cell and locker were extra blankets, extra sheets, tape, food that he been inappropriately taken from the food service area, trash, and a 7 ½ inch sharpened instrument, which was construed as a weapon. (Document No. 20-3.) During the course of the investigation, "inmate X" revealed that Plaintiff had made statements regarding the filing a false tort claim to get some free property.[4] (Document No. 20-2, p. 20.)

On June 8, 2007, the Defendant, by the United States Attorney for the Southern District of West Virginia, filed a Motion to Dismiss, or, in the alternative for Summary Judgment with Memorandum in Support. (Document Nos. 20 and 21.) Defendant contends that Plaintiff's Complaint must be dismissed for the following reasons: (1) To the extent that the Complaint is a Federal Tort Claim suit, the Defendant has been certified as acting within the scope of his employment and the United States should be substituted in his place; (2) Plaintiff's Complaint fails to state a claim of negligence which would be cognizable pursuant to the Federal Tort Claims Act; and (3) Plaintiff has failed to exhaust his administrative remedies for any Bivens allegations in the Complaint. (Document No. 20.)

_____

[4] The name of "inmate X" is not provided due to privacy and safety concerns. Inmate X's name was also redacted from Defendant Skaggs' memo.

On June 12, 2007, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendant's Motion to Dismiss, or in the alternative for Summary Judgment. (Document No. 22.) On June 18, 2007, Plaintiff requested additional time within which to respond to the Defendant's Motion. (Document No. 23.) On July 13, 2007, Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss, or, in the alternative for Summary Judgment. (Document No. 24.) Plaintiff alleges that he has established valid claims under the Federal Tort Claims Act and <u>Bivens</u>. Specifically, Plaintiff responds as follows (Document No. 24.):

> The defense has based it's Response and fight on loop-holes, as there's no dispute to my claim. The defendant is playing the system to his advantage, as he (P. Skaggs) and other CO's have often said 'Who do you think they're going to believe, me or you?'
> Skaggs told me several times, by leaving sticky-pad notes on my locker, that if I wanted to keep 'all' of my property, to make sure that my cell stays clean, and don't make him (Skaggs) have to pack it. (The officers don't like the process of having to inventory 'everything,' therefore, they take the short-cut way out, by only packing the inmates basic items, and make the rest disappear.) This is done as a deterrent from going to (S.H.U.) Special Housing Unit, 'The Hole.'
> The defendant's actions were plain out mean spirited and evil!! One of the photo albums taken contained pictures of my mother in her casket, of her burial site, and clippings; as well as my Godfather's casket and clippings. (These were the only visual-aids of my love ones.)
> We as inmates have to stand for something or fall for anything! I'm here as punishment, not to be subjected to more punishment at the hands of CO's when they chose to do so.
> The system is making us pay for our actions, so should Skaggs as he has abused his authority and me!
> I really couldn't afford to pay for this proceeding, due to paying for my schooling, but I made a way. More importantly, I couldn't afford to let Skaggs get away with this crime against me. Why would I spend the money to take Skaggs to court if the act did not occur? I have submitted a list of my witnesses that saw Skaggs commit the said crime, as my evidence, whereas, Skaggs has yet to say or prove that he didn't commit the said crime.
> Even if the defendant had found a weapon in my locker, he still would not have the authority to do what he did. Yet his counsel (the institution counsel) concurred with his actions, as apples and oranges have nothing to do with the other.

5

I have yet to see any motion by the defense team thus far, so I am doing the best I can to answer the order from what I have in my head.

### THE STANDARDS

**Motion to Dismiss**

The Fourth Circuit Court of Appeals stated the standard for considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 case as follows in Revene v. Charles County Commissioners, 882 F.2d 870, 872 (4th Cir. 1989):

> In actions under 42 U.S.C. § 1983, as generally, a motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts to support [his] allegations. (Citations omitted) As the United States Supreme Court has stated in another § 1983 case
>
> > [w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover it is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.
>
> Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Dismissal is therefore proper in this Bivens action under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

I. **Federal Tort Claims Act.**

A. **Substitution of the United States of America as a Party:**

The United States Attorney filed a Motion to Substitute the United States of America as a party. The United States Attorney certifies that Defendant Skaggs was acting within the scope of his employment with the Federal Bureau of Prisons at the time of the alleged acts. Therefore, the

undersigned finds that the United States of America must be substituted as a party pursuant to 28 U.S.C. § 2679(d)(1)[5] and 42 U.S.C. § 233(c)[6]. The Court further finds that the United States is the only proper party in a suit filed under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671, *et seq*. See Iodice v. U.S., 289 F.3d 270, n. 1 (4th Cir. 2002)(United States is the only proper party in an FTCA action). Accordingly, the United States of America shall be substituted as the sole defendant regarding Plaintiff's claims arising under the FTCA.

**B. Plaintiff's Negligence Claim:**

The United States enjoys sovereign immunity except to the extent that Congress has waived it by enacting the FTCA, 28 U.S.C. §§ 2671, *et seq.* The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. It is clear that the United States may be sued "for . . . personal injury[.]" 28 U.S.C.

---

[5]  28 U.S.C. § 2679(d)(1) provides the following:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

[6]  42 U.S.C. § 233(c) states the following:

> Upon certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto....

§ 2679(b)(1). To maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under the laws of the State in which the action accrued. See 28 U.S.C. § 1346(b); Federal Deposit Ins. Corp. [F.D.I.C.] v. Meyer, 510 U.S. 471, 477, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994)("Indeed, we have consistently held that § 1346(b)'s reference to the 'law of the place; means law of the State – the source of substantive liability under the FTCA."). A claim is permissible under the FTCA if it is actionable under 28 U.S.C. § 1346(b). See F.D.I.C. v. Meyer, 510 U.S. at 477, 114 S.Ct. at 1001. Actionable claims under § 1346(b)[7] must allege "that the United States 'would be liable to the claimant' [for his personal injuries,] as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" Id. ("A claim comes within this jurisdictional grant [of immunity] – and thus is 'cognizable' under §§ 1346(b) – if it is actionable under §§ 1346(b)."); 28 U.S.C. § 1346(b).

Pursuant to West Virginia law, the law of the State in which Plaintiff's injuries occurred, the plaintiff in a negligence action bears the burden of proof by a preponderance of the evidence to demonstrate the applicable standard of care, deviation from that standard, and a causal connection

---

[7] Title 28, U.S.C. § 1346(b) provides:

Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

between the deviation and plaintiff's injury. See Judy v. Grant County Health Dep't, 210 W.Va. 286, 291-92, 557 S.E.2d 340, 345-46 (2001). Thus, for Plaintiff to succeed upon his claim under the FTCA, he must prove that his injury was caused by a negligent or wrongful act or omission by a government employee. 28 U.S.C. § 2672. Negligence is a prerequisite for recovery under the FTCA. Laird v. Nelms, 406 U.S. 797, 798-99, 92 S.Ct. 1899, 1900-1901, 32 L.Ed.2d 499 (1972). To establish a *prima facie* case of negligence under West Virginia law, Plaintiff must demonstrate the existence of a duty on behalf of the United States, that the duty was breached, and the breach of the duty was the proximate cause of his injuries. See State ex rel. Frazier v. Hrko, 203 W. Va. 652, 657, n. 6, 510 S.E.2d 486, 491, n. 6 (1998)("A negligence action requires the plaintiff to prove that a defendant had a duty, breached the duty, that the plaintiff suffered some injury, and that the breach of the duty by the defendant proximately caused the plaintiff's injury."). The issue in the present case is not whether there was a duty, but whether there was a breach of that duty. Specifically, whether prison officials were negligent in handling Plaintiff's property.

Viewing the evidence most favorable to the Plaintiff, the undersigned finds that there is no genuine issue of material fact concerning the alleged negligent handling of Plaintiff's property. Plaintiff alleges only that personal items were missing following a routine search[8] and that he has witnesses who saw Defendant Skaggs take "2 large bags of property from his cell." The unit shakedown log book and Defendant Skaggs' declaration confirms the search of Plaintiff's cell and

---

[8] Plaintiff asserts that the following items were missing following the search: two packs of AAA batteries; one pack of AA batteries; one Sony radio; Koss headphones; 8 books of stamps; clippers; 20 manilla envelopes; two personal photo albums; one typewriter ribbon; one box correction tape; 64 bottles of paint; one magnifying glass; one soap dish; two composition books; five magazines; one pack of push pins; four bottles of glitter; one can opener; and various commissary items. (Document No. 20-2, p. 8.)

the confiscation of property.(Document No. 20-3.) Although Plaintiff may have witnesses who saw Defendant Skaggs take "2 large bags of property from his cell," the undersigned finds that this does not create a genuine issue of material fact because Defendant Skaggs acknowledges that extra blankets, sheets, tape, trash, and food were removed from Plaintiff's cell. The Fourth Circuit has stated that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Next, the undersigned considers whether Defendant is entitled to judgment as a matter of law. Bureau of Prisons policy states the following regarding the search of an inmate's housing or work areas:

(a) Staff may search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence.

(b) Staff conducting the search shall leave the housing or work area as nearly as practicable in its original order.

28 C.F.R. § 552.14. Plaintiff contends that the following items were missing following the search: two packs of AAA batteries; one pack of AA batteries; one Sony radio; Koss headphones; 8 books of stamps; clippers; 20 manilla envelopes; two personal photo albums; one typewriter ribbon; one box correction tape; 64 bottles of paint; one magnifying glass; one soap dish; two composition books; five magazines; one pack of push pins; four bottles of glitter; one can opener; and various commissary items. (Document No. 20-2, p. 8.) Plaintiff further claims that witnesses saw Defendant Skaggs take "2 large bags of property from his cell" and that his paint was found in a trash bin a few days after the search. According to Defendant Skaggs' declaration, Plaintiff's cell was searched and extra blankets, sheets, tape, trash, and food that Plaintiff had inappropriately removed from the foods

11

service area were confiscated. (Document No. 20-3.) The undersigned notes that none of the allegedly missing items were listed as confiscated items in the shakedown log book. (See id.) Defendant Skaggs states that he locked Plaintiff's locker and cell at the conclusions of his search. (Id., p. 2.) Additionally, "inmate X"informed Defendant Skaggs that Plaintiff stated he was going to file a false claim to try to get some free property. (Id.) Plaintiff only presents proof of ownership for the headphones[9] and consumable commissary food items[10]. (Document No. 20-2, p. 7.) The Court notes that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998)(citing, Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986)). Based on the forgoing, the undersigned finds that the facts viewed in the light most favorable to Plaintiff do not indicate that prison officials were negligent in the handling of Plaintiff's property and Defendant's Motion for Summary Judgment must be dismissed for this reason.

## II.  Plaintiff's *Bivens* Claim.

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05;

---

[9]  The headphones were purchased on October 11, 2004. (Document No. 20-2, p. 7.)

[10]  The consumable commissary food items were purchased on August 22, 2005. (Document No. 20-2, p. 7.)

See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to

Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18,

60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a

federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the

federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be

brought against federal agents acting under the color of their authority for injuries caused by their

unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury

is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the

violation of a valid constitutional right by a person acting under color of federal law.[11] The United

States Supreme Court has held that an inmate may name a federal officer in an individual capacity

as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims

are not actionable against the United States, federal agencies, or public officials acting in their

official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308

---

[11] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

(1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A. **Exhaustion of Administrative Remedies:**

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law,"though the administrative process may not afford them the relief they might obtain through civil proceedings.[12] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and Bivens actions. See Yousef v. Reno, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to Bivens claims); Nyhuis v. Reno, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and Bivens actions).

---

[12] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

In <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that administrative exhaustion is not a jurisdictional requirement. The Court stated:

> Section 1997e(c)(2) clearly contemplates the dismissal on the merits of some claims that have not been exhausted. Because a district court must have subject-matter jurisdiction before it can dismiss a claim on the merits, failure to exhaust cannot be viewed as affecting the district court's subject-matter jurisdiction over the claim. See *Chellette*, 229 F.3d at 687 ("Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that jurisdiction is not divested by the failure to exhaust administrative remedies."); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)(per curiam)("The statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." (citation omitted)). We therefore conclude that the PLRA's exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction.

<u>Id</u>. at 678; <u>See also</u>, <u>Perez v. Wisconsin Dept. of Corr.</u>, 182 F.3d 532, 536-37 (7th Cir. 1999); <u>Underwood v. Wilson</u>, 151 F.3d 292, 294 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); <u>Wright v. Morris</u>, 111 F.3d 414, 421(6th Cir.), <u>cert. denied</u>, 522 U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); <u>Nyhuis v. Reno</u>, 204 F.3d at 69, n. 4.

The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c)[13] of the Federal Rules of Civil Procedure like the defense of statute of

---

[13] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

> **Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other

limitations. Anderson, 407 F.3d at 681 ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his § 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19, (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."). Likewise, with respect to Bivens actions, the Seventh Circuit Court of Appeals held in Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted). In the context of claims under the PLRA however, *sua sponte* dismissal by the District

_____

matter constituting an avoidance or affirmative defense.

16

Court is appropriate when it is apparent from the face of the complaint that the inmate has not

exhausted his administrative remedies.

> In the context of PLRA claims, then, we believe it is appropriate to recognize that district courts have the same authority to inquire into the applicability of an affirmative defense as in the habeas context. Such a conclusion gives some teeth to the PLRA's exhaustion requirement, yet does not do a disservice to the statutory language carefully chosen by Congress.

> Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.

Anderson, 407 F.3d at 682.

It appears to be the majority view as well that exhausting administrative remedies after a

Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See

Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action,

citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated:

"The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action

in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the

pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must

be exhausted before the filing of a suit in Federal Court. In Jones v. Bock, __ U.S. __, 127 S.Ct. 910,

166 L.Ed.2d 789 (2007), the Supreme Court found, among other things, that total exhaustion is not required under the PLRA concluding as follows in its Syllabus (c):

> The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to

18

the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. § 542.17(c).

In his Motion, Defendant contends that Plaintiff failed to exhaust fully his administrative remedies prior to filing his Bivens Complaint. (Document No. 21, pp. 14-17.) Defendant states that Plaintiff's administrative history records reveal that he filed numerous requests, but that he "failed to fully complete each level of the process, thereby failing to properly exhaust his administrative remedies." (Id., p 16.) Defendant further points out that even if Plaintiff had filed his first administrative remedy request at the proper level (institutional level), it was untimely. Plaintiff filed his first administrative request on September 19, 2005, which was more than 20 days after the alleged August 24, 2005 incident.[14] (Document No. 20-2, pp. 2 and 28.)

---

[14] Plaintiff's first administrative request filed on September 19, 2005, was rejected as being filed at the incorrect level.

In response, Plaintiff argues that he did not get the January 17, 2006 rejection notice from the Regional Office until January 31, 2006. Plaintiff contends that the 14-day delay made "it impossible to meet the deadline." Therefore, Plaintiff appears to be contending that prison officials' delay in providing Plaintiff with his rejection notice resulted in Plaintiff's appeal being untimely and prevented Plaintiff from fully exhausting his administrative remedies. (Document No. 1.)

After reviewing the record, the undersigned finds that Plaintiff failed to exhaust fully his administrative remedies before filing his Complaint in this civil action and presents no compelling reason why the Court should excuse his failure to exhaust. Essentially, Plaintiff alleges that the exhaustion requirement should be excused because prison officials delayed providing Plaintiff with a rejection notice. Because exhaustion is statutorily mandated under the PLRA, the Courts have been reluctant to carve out any exceptions to the requirement. See e.g., Massey v. Helman, 196 F.3d at 733 ("[T]here is no futility exception to the PLRA's exhaustion requirement."); Booth v. Churner, 532 U.S. at 741, n. 6, 121 S.Ct. at 1825, n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). The undersigned finds that Plaintiff's above reason for seeking waiver of the exhaustion requirement is not supported by the record. In his Complaint and Exhibits, Plaintiff alleges that prison officials' delay in providing Plaintiff with the Regional Office's rejection notice dated January 17, 2006, made it impossible for Plaintiff to timely file an appeal. (Document No. 1.) Although Plaintiff's administrative remedy request at the institutional level was denied on December 13, 2005, Plaintiff failed to file his appeal to the Regional Office until January 13, 2006. (Document No. 20-2, pp. 3 and 29.) The Regional Office's rejection notice dated January 17, 2006, denied Plaintiff's appeal for being untimely. (Id.) Even assuming that Plaintiff did not receive the January 17, 2006, rejection notice until January 31,

2006, this did not result in Plaintiff's claims being untimely. Plaintiff had 16 days to submit an appeal or request an extension of time even if the rejection notice was delayed by 14 days.[15] Plaintiff, however, resubmitted his request to the Regional Office on February 6, 2006, where it was denied for being submitted at the wrong level – not for being untimely. (Document No. 20-2, pp. 3 and 30.) Plaintiff did not file his appeal to the Office of General Counsel until March 30, 2006, where it was rejected for being untimely. (Id.) Furthermore, the undersigned agrees with Defendant that Plaintiff's initial administrative remedy request was untimely and filed at the incorrect level. Plaintiff filed his first administrative request on September 19, 2005, which was more than 20 days after the alleged incident on August 24, 2005. (Document No. 20-2, pp. 2 and 28.) Therefore, Plaintiff failed to timely comply with administrative procedures from the commencement of the administrative remedy process. Accordingly, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies and Defendant's Motion to Dismiss, or, in the Alternative for Summary Judgment, (Document No. 20.) must be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss, or, in the alternative for Summary Judgment (Document No. 20.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E.

---

[15]  Plaintiff had 30 days from the date of the Regional Director's response to file an appeal to the Office of General Counsel.

Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

Date: January 25, 2008.

R. Clarke VanDervort
United States Magistrate Judge